UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------x

UNITED STATES OF AMERICA,

v. Crim. No. 24-528 (ESK)

ARTHUR SPITZER,
MENDEL DEUTSCH, and
JOSHUA FELDBERGER,

Defendants.

---------------------------------------------------------x

**JOINT DEFENSE BRIEF IN OPPOSITION TO THE MOTION BY THE UNITED STATES TO TAKE DEPOSITION UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 15**

**MEISTER SEELIG & FEIN PLLC**
***Attorneys for Arthur Spitzer***
125 Park Avenue, 7th Floor
New York, New York 10017
Phone: (212) 655-3500
Fax: (212) 655-3535

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........ 1

I. Factual Background ........ 2

II. Applicable Law ........ 4

III. In the Instant Case, the Government Has Failed to Show that Exceptional Circumstances Exist and that Individual-6 Is Unavailable for Trial ........ 6

IV. The Interests of Justice Militate Against a Deposition in this Case. ........ 9

V. Conclusion ........ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar-Ayala v. Ruiz*,
973 F.2d 411 (5th Cir. 1992) .......... 4

*Matter of Grand Jury Proc.*,
377 F. Supp. 3d 439 (D. Del. 2018) .......... 4, 5, 11

Ohio v. Roberts,
448 U.S. 56 (1980) .......... 6

*United States v. Bello*,
532 F.2d 422 (5th Cir. 1976) .......... 5

*United States v. Chusid*,
Case No. 00-CR-0263, 2000 WL 1449873 (S.D.N.Y. Sept. 27, 2000) .......... 1, 6

*United States v. Cohen*,
260 F.3d 68 (2d Cir. 2001) .......... 4, 5

*United States v. Coker*,
Case No. 19-CR-0321, 1992 WL 59156 (E.D. Pa. Mar.18, 1992) .......... 7

*United States v. Drogoul,*
1 F.3d 1546 (11th Cir. 1993) .......... 9

*United States v. Faison*,
679 F.2d 292 (3d Cir. 1982) .......... 8, 9

*United States v. Gibbs*,
Case No. 23-CR-00035, 2024 WL 2017609 (D. Del. May 7, 2024) .......... 4, 9

*United States v. Gigante*,
166 F.3d 75 (2d Cir.1999) .......... 10

*United States v. Grossman*,
Case No. 03-CR-1156, 2005 WL 486735 (S.D.N.Y. Mar. 2, 2005) .......... 5

*United States v. Ismaili*,
828 F.2d 153 (3d Cir. 1987) .......... 1, 4, 5, 9

*United States v. Johnpoll*,
739 F.2d 702 (2d Cir. 1984) .......... 6

*United States v. Johnson*,
752 F.2d 206 (6th Cir. 1985) ........................................................................................ 5

*United States v. Jones*,
404 F. Supp. 529 (E.D. Pa. 1975)................................................................................... 9

*United States v. Karoly*,
Case No 08-CR-0592, 2009 WL 1872083 (E.D. Pa. Jun. 29, 2009).................................. 5, 6, 7

*United States v. Oudovenko*,
Case No. 00-CR-1014, 2001 WL 253027 (E.D.N.Y. Mar. 7, 2001) ................................... 9, 10

*United States v. Salko*,
Case No. 07-CR-0286, 2008 WL 4006747 (M.D. Pa. Aug. 26, 2008) .................................. 7, 8

*United States v. Sindona*,
636 F.2d 792 (2d Cir.1980) .......................................................................................... 6

*United States v. Singleton*,
460 F.2d 1148 (2d Cir. 1972) ........................................................................................ 5

*United States v. Varbaro*,
597 F. Supp. 1173 (S.D.N.Y. 1984) ................................................................................ 6

*United States v. Whiting*,
308 F.2d 537 (2d Cir. 1962) ...................................................................................... 1, 6

**Rules**

Fed. R. Crim. P. 15 .............................................................................................. 1, 4, 5, 6

Fed. R. Evid. 804(a) ................................................................................................ 8, 9

## PRELIMINARY STATEMENT

The government's request for authorization to depose Individual-6 should be denied because it has not established that "exceptional circumstances" justify a Rule 15 deposition.[1] *See* Motion By The United States To Take Deposition Under Federal Rule Of Criminal Procedure 15 ("Gov. Mtn.") (May 2, 2025), ECF 61. While Mr. Spitzer and his counsel are sympathetic to this witness' health issues, as proffered by the government, "[c]onclusory statements of unavailability by [government] counsel are insufficient" to satisfy the movant's burden under Rule 15. *United States v. Chusid*, Case No. 00CR0263, 2000 WL 1449873, at *1 (S.D.N.Y. Sept. 27, 2000) (citing *United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962)). The government has not provided any evidence in the form of medical documentation or affidavits to support its bare assertion about the witness' health issues or how those issues and any treatment correlate with his future unavailability. As a result, the government has failed to demonstrate this witness' unavailability for trial, a "critical" prerequisite to a finding of "exceptional circumstances." *United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987).

In addition, considering that depositions are "disfavored" in criminal matters under Third Circuit precedent and the preference is for cross-examination at trial so that jurors can observe the witness as he testifies, the Court should find that ordering Individual-6's deposition at this time also is not "in the interest of justice." Fed. R. Crim. P. 15(a)(1).

[1] Defense counsel for all three defendants conferred regarding the instant opposition. Counsel for Mr. Deutsch and Mr. Feldberger informed us that their clients join in these arguments and asked us to include them as signatories to the pleading.

## I. Factual Background

The defendants are charged in a thirty-count Indictment, which arises out of an alleged scheme to use fraudulent documents and false representations to defraud property owners and mortgage lenders by obtaining millions of dollars in mortgage loans for real estate property the defendants allegedly did not own. Counts 6 through 10 in the Indictment relate to what the government identifies as the "Malcolm X Properties." Indict. at pp. 23-35. According to the Indictment, "[t]he 'Malcolm X Properties' were three mixed-use commercial and residential buildings located on Malcolm X Boulevard in Brooklyn, New York." *Id.* at p. 23. In or around July 2019, "306A Malcolm X Blvd LLC, 306 Malcolm X Blvd LLC, and 308 Malcolm X Blvd LLC (the 'Malcolm X Blvd LLCs'), purchased the Malcolm X Properties." *Id.* at pp. 24-25. The "sole member of [the Malcolm X Blvd LLCs] was Company-2." *Id.* at p. 25.

According to the Indictment, "[t]he operating agreements [for the Malcolm X Blvd LLCs] [] provided that Individual-6 was an authorized signatory who was authorized only to execute documents in connection with the July 2019 purchase of the Malcolm X Properties." *Id.* at p. 25. As such, "[t]he settlement statements for the July 2019 transaction were signed by Individual-6, who was acting as an authorized representative for the purchasing entities [the Malcolm X Blvd LLCs]." Gov. Mtn. at 2.

Within months of Company-2's July 2019 purchase of the Malcolm X Properties, Individual-6 "sought to identify a buyer for the Malcolm X Properties." Gov. Mtn. at 2. "[Individual-6] met and engaged in discussions with defendants Arthur Spitzer and Mendel Deutsch, who were interested in purchasing the Malcolm X Properties." *Id.* The Indictment alleges that "[t]hese discussions did not result in any agreement to sell the Malcolm X Properties to defendants Spitzer and Deutsch." Indict. at p. 25.

The Indictment alleges that, after these discussions, "Spitzer and Deutsch worked with defendant Joshua Feldberger to devise and execute a scheme to obtain a mortgage loan secured by the Malcolm X Properties by making it appear to Bank-2 as if defendant Spitzer actually owned the Malcolm X Properties and that defendant Spitzer had agreed to sell the Malcolm X Properties to an entity controlled by defendant Deutsch." Indict. at p. 25. According to the Indictment, "documents containing the forged signature of Individual-6" were used "to facilitate the [loan] transaction." *Id.* at p. 27.

The Indictment alleges that the defendants "used a document, dated August 2019, purportedly assigning membership in the Malcolm X Blvd LLCs from Individual-6 to defendant Spitzer... [which] made it appear as if defendant Spitzer owned the Malcolm X Properties and therefore could 'sell' the Malcolm X Properties to defendant Deutsch." Indict. at p. 27. According to the Indictment, this assignment document "was not actually signed by Individual-6 and was created not in August 2019, but rather, on a date after the Malcolm X transaction already had closed." *Id.* at pp. 27-28. In addition, the Indictment alleges that Deutsch sent a mortgage broker a "time of essence" letter bearing Individual-6's signature stating that the seller was ready to close the sale of the Malcolm X Properties to Deutsch. *Id.* According to the Indictment, this assignment document "was not actually signed by Individual-6." *Id.*

If a deposition is held, the government "anticipates" that Individual-6 would testify: (1) "that he had discussions with Spitzer and Deutsch about them purchasing the Malcolm X Properties, but no agreement was reached"; (2) "that he did not sign either the 'time of essence' letter or the Assignment that purportedly bear his signature"; (3) "that he did not even have the authority to sell or assign any interest in the Malcolm X Properties in 2020; and (4) "he had no further authority after he executed documents in July 2019 to facilitate the purchase of the Malcolm

X Properties." Gov. Mtn. at 6. In addition, the government "anticipates" that Individual-6 would testify that he had "a discussion with Spitzer after Individual-6 learned about the fake Assignment, during which Spitzer did not disclaim knowledge of the document." *Id.*

**II. Applicable Law**

Motions to take depositions are governed by Federal Rule of Criminal Procedure ("Rule") 15. Rule 15(a) of the Federal Rules of Criminal Procedure states that

> A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of *exceptional circumstances* and in the interest of justice.

Fed. R. Crim. P. 15(a)(1) (emphasis added). As specified in the Rule itself, pre-trial depositions in criminal cases are reserved for "exceptional circumstances." Fed. R. Crim. P. 15(a)(1); see *Ismaili*, 828 F.2d at 158-59; *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001). A prerequisite showing by the government that exceptional circumstances exist is a recognition that a "trial by deposition steps hard on the right of criminal defendants to confront their accusers." *Aguilar-Ayala v. Ruiz*, 973 F.2d 411 (5th Cir. 1992). Therefore, the party moving for a Rule 15 deposition bears the burden of establishing that he has satisfied the relevant factors to prove that "exceptional circumstances" exist. *See Ismaili*, 828 F.2d at 159; *United States v. Gibbs*, Case No. 23CR00035 (MN), 2024 WL 2017609, at *1 (D. Del. May 7, 2024).

According to the amendments to the rule, the taking of a deposition is more limited in the criminal context than it is in the civil context, where the use of depositions are preferred. *Ismaili*, 828 F.2d at 159. "Depositions are 'disfavored' in criminal matters under Third Circuit precedent." *Gibbs*, 2024 WL 2017609, at *1 (citing Ismaili, 828 F.2d at 159). Given this "disfavored" status, according to district courts within the Third Circuit, "it is understandable why the Government or a defendant might need to meet a *very high bar* to prompt the taking of such a deposition." *Matter*

*of Grand Jury Proc. [Redacted]*, 377 F. Supp. 3d 439, 444–45 (D. Del. 2018) (same) (citing *Ismaili*, 828 F.2d at 159) (emphasis added).

As specified in Rule 15 itself, pre-trial depositions in criminal cases are reserved for "exceptional circumstances." Fed. R. Crim. P. 15(a)(1). The 1975 Amendment to Rule 15 explains the meaning of "exceptional circumstances" by stating "[t]he court may grant the motion if it appears that (a) the prospective witness will be unable to attend or be prevented from attending the trial, (b) the prospective witness' testimony is material, and (c) the prospective witness' testimony is necessary to prevent a failure of justice." Advisory Notes to Fed. R. Crim. P. 15. Third Circuit precedent holds that "when the district court exercises its discretion in ruling on a Rule 15(a) motion, considerations of materiality (of the testimony) and unavailability (of the witnesses) remain critical." *Ismaili*, 828 F.2d at 159 (citing *United States v. Johnson*, 752 F.2d 206, 209 (6th Cir. 1985); *United States v. Bello*, 532 F.2d 422, 423 (5th Cir. 1976)). Relying on *Ismaili*, district courts within the Third Circuit hold that "[t]he cases interpreting Rule 15(a), both in this circuit and others, indicate that these conditions from the prior version of the rule remain factors in assessing whether 'exceptional circumstances' exist." *United States v. Karoly*, Case No. 08CR0592, 2009 WL 1872083, *1 (E.D. Pa. Jun. 29, 2009); see also United States v. Cohen, 260 F.3d 68, 78 (2d Cir. 2001) ("A movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice.") (citing *United States v. Singleton*, 460 F.2d 1148, 1154 (2d Cir. 1972)). Even if these factors are satisfied, a court may properly deny the motion if the proposed testimony would be cumulative or consists of hearsay." *United States v. Grossman*, Case No. 03CR1156, 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005).

"Unavailability is to be determined according to the practical standard of whether under the circumstances the [party seeking to take the deposition] has made a good-faith effort to produce the person to testify at trial." *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984) (citing Ohio v. Roberts, 448 U.S. 56, 74 (1980)); see also Advisory Notes to Fed. R. Crim. P. 15 ("'Unavailable' as a witness includes situations in which the deponent . . . (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity.").

Although a court may accept the representations of counsel with respect to the unavailability of a witness, *see United States v. Sindona*, 636 F.2d 792, 804 (2d Cir.1980), *cert. denied*, 451 U.S. 912 (1981), "[c]onclusory statements of unavailability by counsel are insufficient." *Chusid*, 2000 WL 1449873, at *1 (citing *Whiting*, 308 F.2d at 541); *see also United States v. Varbaro*, 597 F. Supp. 1173, 1181 (S.D.N.Y. 1984) ("Although the rule does not necessarily require a showing of certainty that a witness will be unavailable, surely it requires a showing of a specific reason why the witness might not be available. Unfounded speculation is not enough.").

**III. In the Instant Case, the Government Has Failed to Show that Exceptional Circumstances Exist and that Individual-6 Is Unavailable for Trial**

The government's Rule 15 motion should be denied because it has not sufficiently demonstrated that Individual-6 is unavailable for trial. As stated above, "[c]onclusory statements of unavailability by counsel are insufficient" to demonstrate "exceptional circumstances." *Chusid*, 2000 WL 1449873, at *1.

District courts within the Third Circuit strictly construe this proposition, finding that a movant has satisfied its burden under Rule 15 only *after* some independent evidence of unavailability is provided in support of the motion to depose. *See e.g., United States v. Karoly*,

Case No. 08CR592, 2009 WL 1872083, at *2 (E.D. Pa. June 29, 2009) (granting government's motion to depose witness who was elderly, suffered from multiple medical conditions and a history of cancer *after* the government supplemented the arguments made in its Rule 15 motion with a four-paragraph letter from the witness' treating physician demonstrating unavailability); *United States v. Coker*, Case No. 91CR0321, 1992 WL 59156, 1 (E.D. Pa. Mar.18, 1992) (granting government's motion to depose witness in Los Angeles who had "a complicated pregnancy that required a surgical birth" *after* the government presented the court with a letter from the witness' doctor); *see also United States v. Salko*, Case No. 07CR0286, 2008 WL 4006747, at *20 (M.D. Pa. Aug. 26, 2008) (denying government's motion to depose witness holding that government failed to prove unavailability because "[a]lthough the Government has provided a letter from a registered nurse and administrator at Patient X's care facility, no documentation has been submitted by any treating physician.").

Here, the government provides no evidence in support of its bare assertion as to the witness' condition or his future prognosis, which correlates with any future unavailability. The government has provided no medical documentation or affidavits confirming the witness' condition or his potential inability to attend trial. The government has provided no evidence addressing what if any treatments the witness currently is receiving or will receive in the future, and the impact of those treatments on his cancer. The government simply asserts that "[g]iven that a trial date has not been set in this matter—and a trial will not take place until the middle of 2026 at the earliest—it is sadly likely that Individual-6 will be unavailable to testify at trial." Gov. Mot. at 1. While the government contemplates a trial in mid-2026, the current briefing schedule requires pretrial motions to be submitted by September 26, 2025, with oral argument on September 30, 2025. Thus,

a trial date toward the end of 2025 or in early 2026 may be possible and facilitate Individual-6's ability to appear to give testimony.

Characterizing the witness' unavailability as "likely" further undermines the government's motion and is counter to demonstrating "exceptional circumstances." Such speculation and imprecision underscore the need for independent evidence to prove Individual-6's unavailability for trial due to health issues. Use of the term "likely" also renders the government's claimed basis of unavailability uncertain. It is unclear whether the government is asserting that the witness is unavailable for trial because he may pass away or is unavailable for trial because his illness or infirmity impedes the ability to come to court.

The district court in *Salko* denied a Rule 15 motion by the government where similar information was lacking. 2008 WL 4006747, at *20. There, the court held that a witness suffering from a broken foot and a history of cancer was not sufficiently unavailable to require the taking of a video deposition. The court explained that the witness' heel fracture was "temporary, and not the type of limitation that should affect a person's ability to testify at trial." *Id.* at *19. The court acknowledged "that at some point, [the witness] was diagnosed with breast cancer and required a mastectomy," but stated that "no documentation has been submitted by any treating physician." *Id.* at *20. Absent such evidence, "it is unknown if she is currently being treated for breast cancer or if her cancer is in remission. It is also unknown whether she is currently suffering from any other illness." *Id.* Based on this dearth of evidence, the court held that "[t]he exceptional circumstances which justify the taking of a video deposition do not exist at this time." *Id.*

In the related context of unavailability pursuant to Fed. R. Evid. 804(a), the Third Circuit defined the relevant circumstances a court should consider when determining whether a witness is unavailable due to illness. *See United States v. Faison*, 679 F.2d 292 (3d Cir. 1982). Rule 804(a)

defines unavailability similarly to Rule 15 and includes "situations in which the declarant . . . (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." Fed. R. Evid. 804(a). The Court held that when determining the admissibility of statements under Rule 804(a), "a trial judge must consider all relevant circumstances, including: the importance of the absent witness for the case; the nature and extent of cross-examination in the earlier testimony; the nature of the illness; the expected time of recovery; the reliability of the evidence of the probable duration of the illness; and any special circumstances counselling against delay." *Id.* at 297. The government has not provided any independent evidence about the nature of the witness' illness, any treatment he is receiving, how long treatment will last, or how treatment will impact his cancer diagnosis. Thus, this Court lacks a basis to conclude that the witness is unavailable in Mr. Spitzer's case due to illness even under the Rule 804(a) standard.

**IV. The Interests of Justice Militate Against a Deposition in this Case**

Videotaped depositions elicit questions of "fairness" and "justice" for defendants in criminal cases. "Depositions are 'disfavored' in criminal matters under Third Circuit precedent." *Gibbs*, 2024 WL 2017609, at *1 (citing Ismaili, 828 F.2d at 159). District courts within the Third Circuit acknowledge that "the opportunity of the jury to examine the demeanor of the witness is of high significance." *United States v. Jones*, 404 F. Supp. 529 (E.D. Pa. 1975). In *United States v. Oudovenko*, Case No. 00CR1014, 2001 WL 253027 (E.D.N.Y. Mar. 7, 2001), a district court in the Eastern District of New York explained that

> another factor for the law's aversion to depositions in criminal trials… is the "factfinder's [ ] inability to observe the demeanor of the deposition witnesses." *See [United States v.] Drogoul*, 1 F.3d [1546,] 1152 [(11th Cir. 1993)]. By depriving the jury of the opportunity to observe the witnesses as they testify, the jury is hampered in its ability to make credibility assessments and to weigh the evidence fairly. Although this deficiency may be ameliorated in part by the use of videotape,

> it remains true that the jury's ability to assess a witness' demeanor is significantly curtailed.

*Id.* at *4 (citing *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir.1999) (affirming decision to admit testimony obtained through closed-circuit television procedure but noting that "[t]here may well be intangible elements of the ordeal of testifying in a courtroom that are reduced or even eliminated by remote testimony"), *cert. denied*, 528 U.S. 1114 (2000)).

Mr. Spitzer, Mr. Deutsch, and Mr. Feldberger's due process right to cross-examine Individual-6 at trial, so that a jury can observe his demeanor and make first-hand credibility assessments, outweighs the need for a deposition.

## V. Conclusion

For all the above reasons, the Court should deny the government's Rule 15 motion to take Individual-6's deposition. It has failed to satisfy the "very high bar," *Matter of Grand Jury Proc. [Redacted]*, 377 F. Supp. 3d at 444–45, and show that "exceptional circumstances" exist based upon the witness' unavailability for trial. Given the "disfavored" status of depositions in criminal matters and the preference for witness testimony before a jury at trial, ordering a deposition also is not "in the interest of justice."

Dated: May 23, 2025
New York, New York

Respectfully submitted,

MEISTER SEELIG & FEIN PLLC

By: /S/
Henry E. Mazurek
Jason I. Ser
125 Park Avenue, Suite 700
New York, New York 10017
*Attorneys for Defendant Arthur Spitzer*

By: /S/
Timothy D. Sini
Eric Ferrante
Nixon Peabody LLP
Tower 46, 55 West 46th Street
New York, New York 10036-4120
*Attorneys for Defendant Mendel Deutsch*

By: /S/
Zach Intrater
Agnifilo Intrater LLP
445 Park Avenue, 7th Fl.
New York, New York 10022
*Attorneys for Defendant Joshua Feldberger*